UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| QUALITY INFUSION CARE, INC. | § | Bankruptcy Case No. 10-36675 |
| | § | |
| Debtor. | § | |
| RANDY W. WILLIAMS, | § | |
| CHAPTER 7 TRUSTEE, | § | |
| Plaintiff, | § | Civil Case No. H-13-0421 |
| | § | |
| vs. | § | |
| | § | |
| PATRICIA D. SALVATO, M.D. and | § | |
| DIVERSIFIED MEDICAL | § | |
| PRACTICE, P.A., | § | |
| Defendants. | § | |

## SECOND AMENDED COMPLAINT

Randy W. Williams, chapter 7 trustee (the "Trustee") for the estate of Quality Infusion Care, Inc. ("QIC"), files this second amended complaint against Patricia D. Salvato, M.D. ("Salvato") and Diversified Medical Practice, P.A. (the "Practice") (collectively with Salvato, the "Defendants").

### PARTIES AND JURISDICTION

1. The Trustee may be served in this adversary through the undersigned counsel.

2. The Defendants have appeared in this adversary proceeding through counsel and will be served with this Second Amended Complaint through their attorney of record to Leonard H. Simon, Pendergraft & Simon, LLP, The Riviana Building, 2777 Allen Parkway, Suite 800, Houston, TX 77019.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Relief is sought pursuant to 11 U.S.C. §§ 502, 544, 547, 548, 550 and other applicable law.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

### SUMMARY OF THE TRUSTEE'S COMPLAINT

5. The Trustee seeks to recover payments totaling $408,455.43 made by QIC to the Defendants pursuant to 11 U.S.C. §§ 544, 547, 548, and 550 of the Bankruptcy Code, TEX. BUS. & COM. CODE ANN. § 24.001 *et seq.* and other applicable law. Of this amount, approximately $54,375.00 was paid for a sublease of indeterminate size and value. The balance of transfers were advances to the Practice pursuant to a Management Services Agreement. The Defendants never repaid these advances. In addition, the Trustee seeks his attorneys' fees, costs and interest in accordance with applicable law.

### STATEMENT OF RELEVANT FACTS

6. On August 3, 2010, QIC filed a voluntary chapter 11 case. The Court appointed the Trustee as the chapter 11 trustee in the case by Order dated September 27, 2010. The QIC case was converted to a chapter 7 case on January 21, 2011. The Trustee was appointed as the chapter 7 trustee in the QIC case.

7. Prior to the QIC petition date, the Practice received at least the following payments from QIC (the "Transfers"):

| Payment Type | Check Number | Date | Amount in U.S. Dollars |
|---|---|---|---|
| Check | 5069 | 11/08/2006 | 4,375.00 |
| Check | 5241 | 12/06/2006 | 2,500.00 |
| Check | 5454 | 01/02/2007 | 2,500.00 |
| Check | 5612 | 02/05/2007 | 2,500.00 |
| Check | 5789 | 03/06/2007 | 2,500.00 |

| Check | 5939 | 04/02/2007 | 2,500.00 |
|---|---|---|---|
| Check | 6181 | 05/11/2007 | 2,500.00 |
| Check | 6361 | 06/05/2007 | 2,500.00 |
| Check | 6540 | 07/02/2007 | 2,500.00 |
| Check | 6753 | 08/02/2007 | 2,500.00 |
| Check | 6977 | 09/02/2007 | 2,500.00 |
| Check | 7178 | 10/02/2007 | 2,500.00 |
| Check | 7428 | 11/02/2007 | 2,500.00 |
| Check | 7627 | 12/03/2007 | 2,500.00 |
| Check | 7856 | 01/02/2008 | 2,500.00 |
| Check | 8127 | 02/01/2008 | 2,500.00 |
| Check | 8260 | 03/02/2008 | 2,500.00 |
| Check | 2109 | 04/02/2008 | 2,500.00 |
| Check | 8597 | 05/02/2008 | 2,500.00 |
| Check | 8548 | 05/14/2008 | 22,000.00 |
| Check | 8599 | 06/01/2008 | 20,500.00 |
| Check | 2576 | 06/02/2008 | 5,000.00 |
| Check | ACH | 06/11/2008 | 21,000.00 |
| Check | 2494 | 06/26/2008 | 22,000.00 |
| Check | 2616 | 07/10/2008 | 27,000.00 |
| Check | 2652 | 07/24/2008 | 26,100.00 |
| Check | 2750 | 08/13/2008 | 17,700.00 |
| Check | 1241 | 01/27/2009 | 10,000.00 |
| Check | 9417 | 01/28/2009 | 19,000.00 |
| Check | 1486 | 04/24/2009 | 10,000.00 |
| Check | TRANSFER | 05/29/2009 | 30,000.00 |
| Check | TRANSFER | 06/17/2009 | 8,000.00 |
| Check | TRANSFER | 08/18/2009 | 12,000.00 |
| Check | TRANSFER | 08/21/2009 | 1,850.43 |
| Check | TRANSFER | 12/01/2009 | 860.00 |
| Check | 3018 | 01/26/2010 | 11,000.00 |
| Check | TRANSFER | 02/02/2010 | 5,000.00 |
| Check | TRANSFER | 02/08/2010 | 3,800.00 |
| Check | TRANSFER | 02/19/2010 | 26,200.00 |
| Check | TRANSFER | 02/23/2010 | 400.00 |
| Check | 3197 | 02/25/2010 | 2,400.00 |
| Check | TRANSFER | 02/26/2010 | 12,000.00 |
| Check | TRANSFER | 03/03/2010 | 700.00 |
| Check | TRANSFER | 04/08/2010 | 5,000.00 |
| Check | TRANSFER | 04/19/2010 | 12,400.00 |

| Check | TRANSFER | 04/20/2010 | 4,700.00 |
|---|---|---|---|
| Check | TRANSFER | 04/21/2010 | 1,600.00 |
| Check | TRANSFER | 04/22/2010 | 2,000.00 |
| Check | TRANSFER | 04/23/2010 | 8,000.00 |
| Check | TRANSFER | 05/06/2010 | 70.00 |
| Check | TRANSFER | 05/20/2010 | 4,000.00 |
| Check | TRANSFER | 05/20/2010 | 6,800.00 |
| **Total** | | | **408,455.43** |

8.      The Transfers from November 8, 2006 to May 2, 2008 and the payment on June 2, 2008, which total $54,375.00, appear to be made pursuant to a sublease agreement between QIC and the Practice.  The Trustee has not located, and the Defendants have not produced, an executed copy of the sublease agreement.

9.      The remaining Transfers, which total $354,080.43, appear to have been made pursuant to a Management Services Agreement (the "MSA").  The Trustee has not located, and the Defendants have not produced, an executed copy of the MSA.  Section 4.4 of the unexecuted copy of the MSA produced by the Defendants provides that any amounts advanced by QIC to the Practice shall be considered a loan to be repaid by the Practice.  The unexecuted copy of the MSA produced by the Defendants has blank spaces for both the interest rate and maturity date. QIC's audited financials for 2008 refer to a loan to the Practice with an interest rate of 9% and monthly payments of $20,000 beginning on January 1, 2011, and continuing until full repayment.  The Defendants have not repaid QIC for any of the Transfers.

10.     On information and belief, at all relevant times, QIC was insolvent in that (i) the true value of its assets was less than its total liabilities; (ii) QIC was unable to pay its debts as they became due; and/or (iii) QIC was grossly undercapitalized.  QIC's insolvency resulted from, among other things, QIC entering into numerous ill-advised real estate transactions, transferring assets to and paying obligations of its affiliates, incurring substantial expenses related to rapid

Second Amended Complaint Against Diversified Medical Practice, P.A.
Page 4 of 10

and poorly planned business expansion and funding excessive personal expenses of QIC's principals and their family members. Additionally, beginning in 2008, QIC began incurring substantial long term liabilities, which were secured by (among other things) medical accounts receivable. The long term liabilities are likely (in the aggregate) severely under-secured. In fact, QIC's medical accounts receivable have proven to be valued at a fraction of what was previously disclosed to creditors and in the company's financial statements.

### SUIT TO RECOVER AMOUNTS OWED ON LOAN

11.     The Practice has failed to pay the loaned amounts due under the MSA as promised. The Trustee is entitled to payment of all principal and interest due under the MSA along with attorney's fees and costs. All known payments, credits and offsets have been allowed. The unpaid principal balance of the loan is $354,080.43, plus interest at the rate of 9%.

### BREACH OF CONTRACT

12.     Pursuant to Section 4.4 of the MSA, the Practice was obligated to repay any amounts advanced by QIC. The Practice has failed to pay the advanced amounts due under the MSA as promised. The Trustee is entitled to payment of all principal and interest due under the MSA along with attorney's fees and costs. All known payments, credits and offsets have been allowed. The unpaid principal balance of the amount advanced is $354,080.43, plus interest at the rate of 9%.

### ATTORNEY'S FEES, INTEREST AND COST

13.     Pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001, the Trustee is entitled to recover his reasonable attorney's fees. Accordingly, the Trustee requests the Court award reasonable attorney's fees and costs plus pre and post-judgment interest at the applicable federal rate.

**PREFERENTIAL TRANSFERS UNDER 11 U.S.C. § 547**

14. The payments received by the Practice within ninety (90) days of the QIC petition date (collectively, the "Preferential Payments"), to the extent they were paid on account of a QIC obligation, are avoidable as preferential transfers under § 547 of the Bankruptcy Code. Under § 547, the Trustee

> may avoid any transfer of an interest of the debtor in property—
>> (1) to or for the benefit of a creditor;
>> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>> (3) made while the debtor was insolvent;
>> (4) made—
>>> (A) on or within 90 days before the date of the filing of the petition; or
>>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>> (5) that enables such creditor to receive more than such creditor would receive if—
>>> (A) the case were a case under chapter 7 of this title;
>>> (B) the transfer had not been made; and
>>> (C) such creditor receive payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

15. To the extent the Preferential Payments set forth above were paid on account of a QIC obligation, they (i) were made within ninety (90) days of the QIC petition date; (ii) were on account of an antecedent debt; (iii) were to or for the benefit of a creditor; (iv) were made while QIC was insolvent; and (v) enabled the Practice to receive more than it would have been paid in a chapter 7 bankruptcy.

16.     Under § 550(a) of the Bankruptcy Code, the Trustee may recover the payments from "the initial transferee of such transfer or the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a).  The Practice was both the initial transferee and the beneficiary of the Preferential Payments as specifically set forth above.  Salvato was an immediate or mediate transferee of the Practice pursuant to 11 U.S.C. § 550(a)(2).  Consequently, the Trustee is entitled to avoid and recover the Preferential Payments made within ninety (90) days of the QIC petition date as set forth above plus pre- and post-judgment interest.

### FRAUDULENT TRANSFERS UNDER 11 U.S.C. § 548

17.     The payments to the Practice within two years of the QIC petition date, as well as all pre-petition agreements between QIC and the Practice regarding the payment of such amounts (collectively, the "2 Year Transfers"), are avoidable as fraudulent transfers under 11 U.S.C. § 548(a)(1)(B).  Specifically, QIC received less than reasonably equivalent value for the 2 Year Transfers.  On the date of the 2 Year Transfers, QIC (i) was insolvent, or became insolvent as a result thereof; (ii) was engaged or was about to engage in business in which its property after the 2 Year Transfers was unreasonably small capital; and/or (iii) intended to incur or believed it would incur debts that it would be unable to repay.

18.     Under § 550(a) of the Code, the Trustee can recover the payments or the value of the payments from "the initial transferee of such transfer or the entity for whose benefit such transfer was made." 11 U.S.C. §550(a).  The Practice was both the initial transferee and the beneficiary of the payments as specifically set forth above.  Salvato was an immediate or mediate transferee of the Practice pursuant to 11 U.S.C. § 550(a)(2).  The Trustee requests that the Court enter a judgment: (i) avoiding the 2 Year Transfers; and (ii) ordering the immediate return of all pre-petition payments to the Defendants plus pre- and post-judgment interest.

**FRAUDULENT TRANSFERS UNDER TEXAS LAW**

19. All payments to and agreements entered into with the Practice within 4 years prior to the QIC petition date (the "4 Year Transfers") were made in violation of TEX. BUS. & COM. CODE ANN. § 24.001 *et seq.*, which the Trustee incorporates pursuant to 11 U.S.C. § 544(b)(1). Specifically, the 4 Year Transfers were made for less than equivalent consideration and QIC (i) was engaged in business for which the remaining assets were unreasonably small in relation to QIC's business; or (ii) reasonably should have known that QIC was incurring debts beyond its ability to repay them. TEX. BUS. & COM. CODE ANN. § 24.005. A creditor exists whose claim arose before or within a reasonable time after the occurrence of the transfers for whom the Trustee can act.

20. The 4 Year Transfers were also made without QIC receiving reasonably equivalent value in exchange for the 4 Year Transfers and QIC was insolvent at the time of the 4 Year Transfers. A creditor exists whose claim arose before the occurrence of the 4 Year Transfers for whom the Trustee can act. TEX. BUS. & COM. CODE ANN. § 24.006(a).

21. The Trustee seeks (i) the avoidance of the 4 Year Transfers and (ii) the return of all pre-petition payments to the Defendants and/or money damages against the Defendants pursuant to TEX. BUS. & COM. CODE ANN. § 24.008 and 11 U.S.C. §§ 544(b) and 550.

**ATTORNEY'S FEES**

22. The Trustee requests an award of his reasonable fees and costs pursuant to TEX. BUS. & COM. CODE ANN. § 24.013 and other applicable law.

### REQUEST FOR PRE- AND POST-JUDGMENT INTEREST

23. The Trustee seeks pre-judgment interest on the value of all transfers from the date of transfer through the date of judgment at the rate of 5% per annum. The Trustee also seeks pre-judgment interest on the amount due and owing under the MSA. The Trustee seeks post-judgment interest on all money damages awarded hereunder from the date of judgment until paid at the prevailing federal judgment rate.

### PRAYER

Accordingly, the Trustee requests the Court to enter judgment as set forth above and to grant such other relief as is just.

**Dated: June 24, 2013.**

        Respectfully submitted,

        **Porter Hedges LLP**

By:   /s/ Joshua W. Wolfshohl
       Joshua W. Wolfshohl
       State Bar No. 24038592
       Aaron J. Power
       State Bar No. 24058058
       1000 Main Street, 36th Floor
       Houston, Texas 77002
       (713) 226-6000
       (713) 228-1331 (fax)

        **Counsel for the Trustee**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was duly served by United States first class mail with proper postage affixed, to counsel for Leonard H. Simon, Pendergraft & Simon, LLP, The Riviana Building, 2777 Allen Parkway, Suite 800, Houston, TX 77019 and by electronic transmission to all registered ECF users appearing in this adversary on June 24, 2013.

        /s/ Joshua W. Wolfshohl
        Joshua W. Wolfshohl